**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>GILBERTO LERMA-PLATA,<br><br>Defendant. | **Criminal No. 11-238-1(CKK)** |

**MEMORANDUM OPINION**
(January 30, 2013)

Gilberto Lerma-Plata ("Defendant") is charged with being part of a conspiracy, from on

or about 2006 to on or about July 29, 2011, the date of Defendant's indictment, whose objective

was to distribute five kilograms or more of cocaine and 1,000 kilograms or more of marijuana,

knowing and intending that said substances would be imported into the United States.  Presently

before the Court is the Government's [19] Motion *in Limine* to Introduce Evidence at Trial of

Defendant's Other Crimes.  The Government seeks to admit the following two categories of

evidence: (1) evidence that Defendant purportedly engaged in a conspiracy to launder money and

traffic firearms as part of the charged drug conspiracy, and (2) evidence of the Defendant's

alleged prior drug trafficking activity from 1998 to 2001.  The Government contends that the

first category of evidence constitutes "intrinsic" evidence of the charged conspiracy.  In the

alternative, the Government argues that this evidence is also admissible as "other crimes"

evidence pursuant to Federal Rule of Evidence 404(b).  Regarding the second category of

evidence, the Government contends that the evidence is admissible as "other crimes" evidence

pursuant to Rule 404(b), to show intent, knowledge, and the development of Defendant's

relationship with a co-conspirator.   For the reasons stated below, upon consideration of the

pleadings,[1] the relevant legal authorities, and the record as a whole, the Government's motion is

GRANTED-IN-PART and HELD-IN-ABEYANCE-IN-PART.  Specifically, the Court finds that

the first category of evidence – that relating to Defendant's purported involvement in a

conspiracy to launder money and traffic firearms – is "intrinsic" to the conspiracy with which

Defendant is charged, and is thus admissible on that basis.[2]  Regarding the second category of

evidence – that relating to Defendant's alleged drug trafficking activity from 1998 to 2001 – the

Court shall conditionally admit this evidence pursuant to Rule 404(b), but shall defer judgment

until trial as to whether it should be excluded under Federal Rule of Evidence 403.

## I. BACKGROUND

Defendant's indictment charges that from in or around 2006 and continuing thereafter up

to and including July 29, 2011, in the countries of Mexico, the United States, and elsewhere,

Defendant did knowingly and unlawfully conspire with others to commit the following offenses

against the United States: (1) to knowingly and intentionally distribute five kilograms or more of

a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled

substance, into the United States and (2) to knowingly and intentionally distribute 1,000

kilograms or more of a mixture and substance containing a detectable amount of marijuana, a

Schedule I controlled substance, intending and knowing that such substance would be unlawfully

imported into the United States, all in violation of 21 U.S.C. §§ 959, 960, 963, and 18 U.S.C. § 2.

---

[1] Gov't Mot., ECF No. [19]; Def.'s Opp'n, ECF No. [22]; Gov't Reply, ECF No. [23].  In an exercise of its discretion, the Court finds that holding a hearing would not be of assistance in rendering a decision on this motion.

[2] The Court need not reach the Government's argument that the first category of evidence constitutes other-crimes evidence admissible under Rule 404(b).  Nevertheless, the Court shall construe the Government's motion as a notice of Rule 404(b) evidence in the event the Government seeks to introduce this evidence pursuant to Rule 404(b) at trial.

According to the Government, Defendant was employed as Commander of the State Police in the city of Miguel Aleman, Tamaulipas, Mexico, and used this position of authority to engage in drug trafficking activities with a Mexican drug cartel known as "The Company." Gov't Mot. at 1.   The Government's theory of the conspiracy is, generally speaking, that Defendant received payments from members of The Company in return for protecting members of The Company conducting drug trafficking activities in the regions that Defendant, as a Police Commander, was charged to protect.   *Id.*   The Government also intends to prove at trial that Defendant further supported the mission of The Company by becoming directly involved in the importation of cocaine and marijuana into the United States, the transportation of drug proceeds back to Mexico from the United States, and the acquisition of firearms for members of The Company.   *Id*. at 3.

The Government contends that pursuant to a judicially authorized wiretap, Defendant was intercepted discussing shipments of cocaine and marijuana, the acquisition of weapons, and the transportation of bulk cash with a prominent member of The Company, Samuel Flores-Borrego ("Flores").   *Id*.   The Government alleges that prior to becoming a leading member of The Company, Flores was a police agent in Miguel Aleman, who served under Defendant's supervision.   *Id*. at 2.   Once Flores climbed the ranks of The Company, he allegedly controlled The Company's operations in and around Miguel Aleman, obtained and provided information to members of The Company regarding certain law enforcement operations directed against The Company, and was actively involved in managing the activities of The Company in Mexico, including the coordination of cocaine and marijuana shipments into the United States, as well as the receipt of bulk currency shipments into Mexico from the United States.   *Id*.

In the instant motion, the Government has given notice of its intent to introduce two categories of "other crimes" evidence against the Defendant in support of the above allegations. First, the Government seeks to admit evidence that during the time of the charged drug conspiracy, from on or about 2006 to on or about July 29, 2011, Defendant conspired to launder narcotics proceeds and traffic firearms with and on behalf of members of Mexican drug-trafficking organizations, the Gulf Cartel and "Los Zetas," in order to support their drug trafficking activities. According to the Government, it will prove at trial that "Los Zetas" was an armed faction of The Company, comprised of ex-military personnel who acted as enforcers and hit-men to protect the drug trafficking territory of The Company from rival drug traffickers. Second, the Government seeks to admit evidence showing that, from on or about 1998 to on or about 2001, Defendant received payments from drug traffickers in the city of Miguel Aleman, Tamaulipas, Mexico, while in his role as Commander of the State Police, in exchange for protection for their drug trafficking activities.

## II. LEGAL STANDARD

Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," but "may be admissible for another purpose," including proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(1), (2). The rule is one of "inclusion rather than exclusion." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). Importantly, the Government need not show that the evidence is being offered for one of the purposes specifically enumerated in the rule. *Id*. at 929-30. Rather, the Government need only show that it is offered for a valid purpose other than to prove a person's propensity to commit similar acts.

*Id*. at 929 ("Although the first sentence of Rule 404(b) is framed restrictively, the rule itself is quite permissive, prohibiting the admission of other crimes evidence in but one circumstance— for the purpose of proving that a person's actions conformed to his character.") (internal marks and citation omitted).

The Rule proscribes certain procedures for prosecutors to provide notice of proposed 404(b) evidence to the defense and also entitles the defendant to a limiting instruction restricting the jury's consideration of the evidence to the purpose for which it is admitted. *See* Fed. R. Evid. 404(b), 105. In addressing trial court determinations on the admissibility of "other crimes" evidence under the Federal Rules of Evidence, this Circuit has employed a two-step mode of analysis. Under the first step, which addresses Rule 404(b), "[the court] must determine whether the evidence is relevant to a material issue other than character. If so, [the court] proceeds to the second inquiry," under Federal Rule of Evidence 403, "whether the probative value is substantially outweighed by the prejudice." *United States v. Burch*, 156 F.3d 1315, 1323 (D.C. Cir. 1998) (quoting *United States v. Mitchell*, 49 F.3d 769, 775 (D.C. Cir. 1995)).

Here, a key issue before the Court is whether the first category of evidence the Government intends to offer – that relating to Defendant's purported involvement in a conspiracy to launder money and traffic firearms as part of the charged drug conspiracy – can be considered "intrinsic" to the crimes charged such that it is not subject to the limitations of Rule 404(b) because, by its very nature, it does not involve *other* crimes, wrongs, or bad acts, and thus there is no concern that it might be used as improper character evidence.

The D.C. Circuit has criticized the distinction between "intrinsic" and "extrinsic" evidence, commonly invoked to avoid the procedural requirements associated with introducing "other crimes evidence" pursuant to Rule 404(b). *United States v. Bowie*, 232 F.3d 923, 927

(D.C. Cir. 2000).   Notably, "intrinsic" evidence of a charged offense will always satisfy the requirements of Rule 404(b), thus the distinction serves only to "relieve the prosecution of Rule 404(b)'s notice requirement and the Court of its obligation to give an appropriate limiting instruction upon defense counsel's request," as well as to avoid the compulsory Rule 403 balancing pursuant to the second step of the Rule 404(b) analysis.   *Id*.   The *Bowie* court explained that although the D.C. Circuit had framed the inquiry in terms of whether the evidence was "inextricably intertwined" with the charged crime, it had never previously defined the meaning of that term.   *Id*. at 928.   Attempts by other circuits to define "inextricably interwined" proved unhelpful, as they were circular and overly broad.   *Id*. (rejecting the approach adopted by other circuits defining "inextricably intertwined" evidence as that which "completes the story" or "explains the circumstances" of the charged offense).

Nevertheless, the *Bowie* Court recognized that (at least) two types of evidence may be properly considered "intrinsic," that is, not subject to Rule 404(b):  (1) evidence "of an act that is part of the charged offense"; and (2) evidence of "some uncharged acts performed contemporaneously with the charged crime … [that] facilitate the commission of the charged crime."   *Id*. at 929.   However, "it cannot be that all evidence tending to prove the crime is part of the crime."   *Id.*   In *Bowie*, the application was straightforward.   The D.C. Circuit held there that evidence that the defendant had been caught with counterfeit currency one month prior to his arrest for possession of counterfeit bills with the exact same serial numbers was not intrinsic to the later crime of possession.   *Id.*   The Court concluded that although all of the bills "were doubtless from the same batch, and the evidence indicated that Bowie purchased them at one time[,] . . . the indictment charged him only with possession of the counterfeit bills found on [the later date]."   *Id.*   Accordingly, the evidence had to be analyzed under the rubric of Rule 404(b).

*Id.*; *cf. United States v. Alexander*, 331 F.3d 116, 125-26 (D.C. Cir. 2003) (holding that evidence that the defendant had a gun in his possession just minutes before he was arrested for unlawful possession of a firearm constituted direct evidence of the charged crime and not evidence of an "other" act).

Admittedly, application of the *Bowie* formulation is more difficult in cases involving conspiracy offenses. As this Court has previously observed,

> [F]ew acts may be truly intrinsic to the charged crime…. [W]here the crime charged is conspiracy, evidence closely related to the conspiracy alleged in the indictment is admissible as intrinsic evidence. However, when evidence of prior acts relates to actions substantially different from the goals of the conspiracy charged, and occurs prior to the commencement of the conspiracy period, that evidence is better analyzed as falling under the purview of Rule 404(b).

*United States v. Khanu*, 664 F. Supp. 2d 80, 83 (D.D.C. 2009) (internal citations omitted), *judgment aff'd*, 662 F.3d 1226 (D.C. Cir. 2011).

Regardless of whether evidence is admitted as intrinsic to the charged crimes or as "other acts" evidence under Rule 404(b), the evidence may be excluded, as with all relevant evidence, under Rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of evidence."

### III. DISCUSSION

**A. Evidence of Defendant's Alleged Involvement in a Conspiracy to Launder Narcotics Proceeds and Traffic Firearms in Connection With the Charged Conspiracy**

The Government seeks to admit evidence that during the time of the charged conspiracy from on or about 2006 to on or about July 29, 2011, Defendant conspired to launder narcotics proceeds and traffic firearms with and on behalf of members of Mexican drug-trafficking organizations, the Gulf Cartel and "Los Zetas" – an armed faction of The Company – in order to

7

support their drug trafficking activities.  Specifically, the Government intends to introduce approximately thirteen recorded telephone conversations between Defendant and Flores.  As the Government represents in its motion, while Defendant and Flores discuss the shipments of cocaine and marijuana to the United States during the calls, which are part of the charged conspiracy, they also discuss the transport of the proceeds of the sale of narcotics in the United States back to Mexico during the same conversations.  *See* Gov't Mot. at 5.  Also during those conversations, Defendant allegedly offers to supply firearms to Flores, and Flores purportedly mentions, through the use of code words, the need for AK-47s and AR-15s.  *See id*. at 5-6 (excerpting unofficial translation of an intercepted telephone conversation occurring on June 20, 2007, during which Defendant and Flores contemporaneously discuss the transport of the proceeds of narcotics sales and firearms from the United States, as well as a 500 to 1,000 pound shipment of marijuana).

The Government argues that the recordings in which Defendant conspired with Flores and others to launder money and engage in firearms trafficking are "inextricably intertwined" with the charged drug conspiracy and therefore admissible as direct proof of that conspiracy, without requiring analysis under 404(b).  Gov't Mot. at 7.  Notably, in his opposition brief, Defendant neglects entirely to respond to the Government's argument that his alleged conspiracy to launder money and traffic firearms is intrinsic to the charged conspiracy and therefore not subject to the strictures of 404(b).  Accordingly, the Court treats this argument as conceded.  *Cf. Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").

Even if Defendant had not conceded this point, the Court would easily conclude, based on the present record, that the Government's proposed evidence of Defendant's alleged conspiracy to launder money and traffic firearms is properly considered intrinsic to the charged drug conspiracy as contemporaneous acts that facilitated the commission of the charged offense. *See Bowie*, 232 F.3d at 927 and discussion *supra* Part II.  As the Government has represented, the conversations between Defendant and Flores about money laundering and firearms trafficking were contemporaneous with the conversations about the distribution of cocaine and marijuana, often occurring within the same phone calls, reflecting even Defendant's own inability to compartmentalize his conversations about these issues.  *See* Gov't Mot. at 7-8. Removing portions of the telephone recordings involving money laundering and firearms trafficking would not portray an accurate picture of the manner and means by which The Company executed the drug conspiracy and would not paint an accurate picture of Defendant's role in the conspiracy. *See United States v. Gooch*, 514 F. Supp. 2d 63, 70 (D.D.C. 2007), *aff'd*, 665 F.3d 1318 (D.C. Cir. 2012) (admitting, in case charging defendant with participation in narcotics and racketeering conspiracies run by a group known as the "M Street Crew," evidence of various uncharged incidents that took place during the timeframe of the relevant conspiracies, including the defendant's uncharged assault on a police officer which occurred while defendant's co-conspirators freed him from an attempted arrest, because such evidence "demonstrated [the defendant's] position in the M Street Crew and was intrinsic to the charged conspiracies.").

Even more critical to the analysis, the alleged money laundering and firearms trafficking undoubtedly constitute "uncharged acts performed contemporaneously with the charged crime" that "facilitate[d] the commission of" the charged drug trafficking conspiracy. *Bowie*, 232 F.3d at 927.  According to the Government, one or more witnesses will testify at trial that The

Company maintained an armed faction, "Los Zetas," and that "Los Zetas" used violence and threats to facilitate the distribution of drugs throughout Mexico for importation into the United States. In view of this proposed testimony, evidence regarding alleged acts and statements by Defendant about the negotiation, purchase, and sale of firearms, would clearly constitute direct evidence of the manner and means used by The Company to carry out the conspiracy during the time period stated in the indictment. Further, evidence of Defendant's alleged involvement in the financing of drug transactions and the movement of money – the very nuts-and-bolts of any drug trafficking operation – is likewise admissible as contemporaneous conduct designed to facilitate, and advance the goals of, the charged conspiracy. *See, e.g.*, *United States v. Edwards*, — F. Supp. 2d —, 2012 WL 3834823, at \*3 (D.D.C. Sept. 5, 2012) (holding, in prosecution for conspiracy to distribute and possess with intent to distribute cocaine, that evidence of alleged incident in which defendant threatened co-conspirator with a gun constituted intrinsic evidence of the charged conspiracy because the conduct, which took place contemporaneously with the conspiracy at issue, represented an attempt to protect the object and proceeds of the charged conspiracy and also plausibly facilitated the conspiracy by solidifying the defendant's purported role as a leader of the conspiracy and reinforcing the expectation of loyalty amongst the co-conspirators).

Defendant has not only neglected, as aforementioned, to respond to the Government's argument regarding the "intrinsic" nature of this evidence, but Defendant in fact concedes that all of the evidence proposed in the Government's motion "may be relevant" to the issue of Defendant's knowledge, intent, and/or absence of mistake, depending on the other evidence presented at trial. Def.'s Opp'n at 1. However, Defendant argues, albeit conclusorily, that the evidence may be substantially more prejudicial than probative and that the Court should wait

until the time the evidence is sought to be admitted at trial to determine whether it should be excluded under Federal Rule of Evidence 403. *Id*. at 1-2. For example, Defendant argues that the Court should wait until trial to see whether the issue of Defendant's intent or knowledge that the cocaine or marijuana was to be unlawfully imported into the United States – here, elements of the charged conspiracies – has been contested. *Id*. at 2. If it has not, Defendant argues, evidence of other crimes may unfairly prejudice Defendant. *Id*. at 2.

The Court finds Defendant's arguments, insofar as they relate to the Government's first category of proposed evidence, unavailing. First, the D.C. Circuit has routinely rejected any correlation between the "contestedness" of an element of an offense and the admissibility of evidence probative of that element. *See United States v. McCarson*, 527 F.3d 170, 173-74 (D.C. Cir. 2008) ("[The Defendant's] choice not to put at issue an element of the charged offense is irrelevant to the admissibility of evidence offered to prove that element."); *United States v. Douglas,* 482 F.3d 591, 596-600 (D.C Cir. 2007) ("Even if a defendant concedes an element of an offense, the government still has the burden of proving that element to the jury beyond a reasonable doubt."). *See also United States v. Morrow*, Crim No. 04-355, 2005 WL 3159572, at *9 (D.D.C. Apr. 7, 2005), *aff'd*, 642 F.3d 1062 (D.C. Cir. 2011) ("[T]he traditional rule is that even with such a concession, the Government is still empowered to present the case as it deems in order to give what it considers a full portrait of the relevant conspiracies.") (citation omitted).

Second, the Court notes that all evidence of additional criminal activity is prejudicial to some extent. The relevant inquiry, under the Federal Rules, is whether the probative value of the evidence is "substantially outweighed" by a danger of unfair prejudice. FED. R. EVID. 403. *See also id.*, Advisory Committee Note ("'Unfair prejudice' … means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one"). As the

Government correctly argues, the danger that the Court must weigh is not the danger that the evidence will weaken Defendant's defense, but rather, the danger that the jury may misuse the evidence by inferring that, merely because Defendant engaged in these other bad acts, he is prone to commit the crime charged. *See United States v. Mitchell*, 49 F.3d 769, 777 (D.C. Cir. 1995). Put differently, "the test under Rule 403 is 'unfair prejudice,' not just any prejudice or harm to the defense." *United States v. Sitzmann*, 856 F. Supp. 2d 55, 61-62 (D.D.C. 2012) (citations omitted). *See also United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) ("Virtually all evidence is prejudicial or it isn't material. The prejudice must be unfair.") (quotation and citation omitted). Here, the Court has found, for the reasons discussed at length above, that evidence of Defendant's alleged participation in a conspiracy to launder money and to traffic firearms constitute contemporaneous acts that facilitated the commission of the charged conspiracy – and is therefore inseparable from, and directly and highly probative of, the charged conspiracy. Put differently, the evidence, by its very nature, could not lead to an unfair inference that Defendant is "prone" to commit the crime charged because the purported money laundering and firearms trafficking are themselves alleged to be part and parcel to the crime charged. The fact that Defendant has not been charged for these alleged constituent acts does not itself indicate prejudice. The Government will be required to lay the necessary foundation for all evidence proffered at trial, and the jury will receive explicit instructions regarding the offenses with which Defendant is charged, and the elements thereof.

**B. Evidence of Defendant's Alleged Receipt of Payments From Drug Traffickers in Exchange for Protection From 1998 to 2001**

The Second category of evidence the Government seeks to admit is evidence that, from on or about 1998 to on or about 2001, Defendant received payments from drug traffickers in the

city of Miguel Aleman, Tamaulipas, Mexico, while in his role as Commander of the State Police, in exchange for protection for their drug trafficking activities.

As proof, the Government intends to offer the testimony of a cooperating witness ("Cooperating Witness"), who is a drug trafficker and a member of the Gulf Cartel, who will purportedly testify that when Cooperating Witness moved to the city of Miguel Aleman, Mexico in or around 1998, Defendant was a State Police Commander in charge of all of the police agents in the Miguel Aleman region.  Gov't Mot. at 3.  According to the Government Cooperating Witness will also testify that upon moving to Miguel Aleman, but before beginning drug trafficking activity in the region, Cooperating Witness met with Defendant to arrange for payments to be made to Defendant in exchange for protection from law enforcement action against Cooperating Witness's drug trafficking activities.  *Id*. at 3-4.  Specifically, Cooperating Witness is expected to testify that Cooperating Witness made several payments to Defendant, often in person, totaling around $15,000 to $20,000 U.S. dollars per year in connection with shipments of marijuana that moved through Miguel Aleman for eventual importation into the United States.  *Id.* at 4.  Cooperating Witness will testify that Defendant was told of the specific type of drug (marijuana) that Cooperating Witness was trafficking through Miguel Aleman, and will also explain that the purpose of these payments was to prevent law enforcement from seizing the drugs, avoid arrest for drug trafficking activities, and receive warnings of military action against drug trafficking activities in the region.  *Id*.  Finally, Cooperating Witness is also expected to testify about Defendant's relationship with Flores, during the time period from on or about 1998 to on or about 2001 – specifically, that Flores was a police agent under Defendant's command who was also involved in providing protection to narcotics traffickers in the Miguel

Aleman region, and that Defendant and Flores enjoyed a close personal friendship, including

Defendant serving as godfather to one of Flores's children. *Id.* at 4-5.

Unlike evidence of Defendant's alleged money laundering and firearms trafficking, *see*

*supra* Part III.A., Defendant does not, and could not, argue that the above described testimony –

regarding conduct that allegedly began eight years prior to the conspiracy with which Defendant

is presently charged – is "intrinsic" to the crime charged. *See Bowie*, 232 F.3d at 929 (holding

that evidence of an earlier-in-time crime that was nearly identical to and factually connected to a

charge in the indictment could not be considered intrinsic evidence of the crime charged).

Accordingly, the Court must consider this second category of proposed evidence as "other

crimes" evidence pursuant to the two-step analysis required by Rule 404(b). *See supra* Part III.

First, the Court must determine "whether the evidence is relevant to a material issue other

than character." *Burch*, 156 F.3d at 1323.  The Government argues that  evidence of Defendant's

involvement in drug trafficking activity, as demonstrated through his acceptance of payments

from Cooperating Witness from in or around 1998 through in or around 2001, is relevant to show

Defendant's intent, knowledge, and the development of Defendant's relationship with Flores and

therefore, with The Company.  *See* Def.'s Mot. at 11.  The Court agrees.  Testimony regarding

Defendant's acceptance of payments in the Miguel Aleman region from in or around 1998 to in

or around 2001 is probative of Defendant's later intent, from in or around 2006 through on or

about July 29, 2011, to engage in a conspiracy with members of The Company to import

narcotics into the United States, or to his knowledge that such substances would be unlawfully

imported into the United States as part of the conspiracy.  *See* FED. R. EVID. 404(b) (listing

"intent" and "knowledge" among the permitted uses of "other crimes" evidence).  *See also, e.g.*,

*McCarson*, 527 F.3d at 222 (holding that the district court acted within its discretion in admitting

evidence of defendant's two prior convictions for possession of a gun and two prior convictions

for distribution of crack cocaine as 404(b) evidence at the defendant's trial on charges of being a

felon in possession of a firearm and possessing with intent to distribute cocaine base, given that

the charges were based on the defendant's constructive possession of the same types of

contraband involved in the prior convictions and was therefore relevant to issues of the

defendant's intent and knowledge).   Furthermore, testimony regarding Flores's purported

involvement in providing protection to drug traffickers during this earlier time period, as well as

his alleged professional and close personal relationship with Defendant, is likewise relevant to

the background of the conspiracy with which Defendant is now charged.  *See United States v.

Mathis*, 216 F.3d 18, 26 (D.C. Cir. 2000) ("In a conspiracy prosecution, the government is

usually allowed considerable leeway in offering evidence of other offenses to inform the jury of

the background of the conspiracy charged, to complete the story of the crimes charged, and to

explain to the jury how the illegal relationship between the participants in the crime developed.")

(internal quotation marks and citation omitted).   Finally, although not a determinative

consideration given the Court's foregoing analysis, it certainly bears mention that Defendant

expressly concedes that evidence of Defendant's alleged receipt of payments from drug

traffickers from in or around 1998 to 2001 "may be relevant," to the issues of knowledge, intent,

and/or absence of mistake in connection with the charged conspiracy.  Def.'s Opp'n at 1.

Having determined that the proposed evidence regarding Defendant's alleged prior drug

trafficking activity is relevant to a material issue other than character, the Court shall proceed to

the second step – balancing the probative value of the evidence against the danger of unfair

prejudice under Federal Rule of Evidence 403.  *Burch*, 156 F.3d at 1323.  The Government

contends that the proffered evidence is highly probative of Defendant's knowledge and intent,

because the alleged prior acts bear a close relationship to the offenses charged.  Gov't Mot. at 12.

Specifically, the Government argues that both the charged conspiracy and the uncharged earlier

acts involve the distribution of narcotics, and Defendant's role in the prior uncharged conspiracy

and the initial relationship between Defendant and Flores were the links that enabled Defendant

and Flores to continue with similar activity that is the subject of the charged conspiracy.  *Id*.

Defendant counters that evidence regarding Defendant's alleged prior drug trafficking

activity dating back to 1998 "may be" substantially more prejudicial than probative, depending

on the evidence presented at trial.  *Id*. at 1-2.  As Defendant's briefing on this point is cursory, it

remains unclear exactly what "unfair prejudice" may befall Defendant beyond that predictably

accompanying any evidence of additional criminal activity, although Defendant's point that

defense counsel knows nothing about the putative witness who will testify that Defendant

accepted the payments beyond that stated in the Government's motion is not lost on this Court.

*See* Def.'s Opp'n at 2 (noting that Rule 403 also permits the Court to consider if the evidence

presents a danger of wasting time or undue delay and expressing concern that the cross-

examination of the proposed cooperating witness may result in a "mini-trial" on a collateral

issue, needlessly prolonging trial).  In the end, Defendant requests that the Court wait to conduct

the Rule 403 balancing until the time when the Government seeks to admit this "other crimes"

evidence, when the Court will have the benefit of considering the proffered evidence within the

context of the other evidence presented at trial.  *Id*. at 1-2.

The Court has considered these arguments, and based on the present record, harbors

serious doubt that the high probative value of the Government's second category of proposed

evidence would be substantially outweighed by a danger of prejudice, confusion of the issues, or

undue delay.  This is especially true given the marked similarities between Defendant's alleged

role in the uncharged prior conspiracy and his alleged role in the conspiracy that gave rise to the

instant prosecution.  *See U.S. v. Harrison*, 679 F.2d 942, 948 (D.C. Cir. 1982) ("In determining

whether 'the probative value is substantially outweighed by the danger of unfair prejudice' it is a

sound rule that the balance should generally be struck in favor of admission when the evidence

indicates a close relationship to the offense charged.") (quoting *United States v. Day*, 591 F.2d

861, 878 (D.C. Cir. 1978)).  Nevertheless, the Court agrees with Defendant that a final decision

as to whether this "other crimes" evidence shall be admitted under Rule 403 would be better

informed by the meaning, foundation, and relevance of the evidence within the framework of the

trial.  And based on the Government's briefing, it appears to the Court that all testimony

regarding Defendant's alleged involvement in drug trafficking activity from in or around 1998 to

2001 would issue from a single witness who could presumably testify at or near the end of the

Government's case, permitting the Court to weigh its probative value against any possible unfair

prejudice in the context of the evidence already presented.  Finally, if admitted, the Rule 404(b)

evidence will be accompanied by a limiting instruction to the jury as to the purpose of the

evidence and how the jury is to consider it.

## IV. CONCLUSION

For the foregoing reasons, the Government's [19] Motion *in Limine* to Introduce

Evidence at Trial of Defendant's Other Crimes is GRANTED-IN-PART and HELD-IN-

ABEYANCE-IN-PART.  The Court shall admit the Government's proposed evidence regarding

Defendant's alleged involvement in a conspiracy to launder money and traffic firearms during

the time of the charged conspiracy, from on or about 2006 to on or about July 29, 2011, as direct

proof of his involvement in the charged conspiracy.  Regarding the Government's proposed

evidence of Defendant's alleged acceptance of payments from drug traffickers, from in or around

1998 to in or around 2001, in exchange for police protection for their drug trafficking activities, the Court shall conditionally admit such evidence pursuant to Federal Rule of Evidence 404(b) and reserve its judgment as to Defendant's objections under Federal Rule of Evidence 403 until trial.

An appropriate order accompanies this Memorandum Opinion.


                                                          _____
                                                                        */s/*
                                                          **COLLEEN KOLLAR-KOTELLY**
                                                          United States District Judge